# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

REBECCA DERNOVISH & )
ALEX WELCH, individually and )
on behalf of all others similarly )
situated, )
                       )
            Plaintiffs, )
                       )
v. ) Case No. 4:09-cv-00015-ODS
                       )
AT&T OPERATIONS, INC. )
(f/k/a SBC Operations, Inc., f/k/a )
Southwestern Bell Communications, )
Inc.), )
                       )
            Defendant. )

## SUGGESTIONS IN SUPPORT OF MOTION TO RECONSIDER
## ISSUE OF INDIVIDUALIZED DISCOVERY

This Court's June 8, 2010 Order (Doc. 203) is fundamentally unfair and creates an unconscionable inequity between the parties. AT&T Operations, Inc. ("Defendant" or "AT&T"), with this discovery order, has been denied the right to gather the evidence necessary to oppose Plaintiffs' claims. As it stands, AT&T may not conduct individualized discovery regarding: (1) alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* (the "FLSA"), and the highly individualized defenses to such claims; (2) all damages sought by each Plaintiff and opt-in plaintiff; and (3) Plaintiffs' underlying contention that over 5,000 potential opt-in plaintiffs – working in over 40 different job titles at more than 70 locations across the country – are in fact "similarly situated" to the two Plaintiffs. For the reasons set forth below, AT&T asks this Court to reconsider, and modify, its Order to comport with applicable law and notions of due process and fundamental fairness**.**

**Issue for Reconsideration**

Is AT&T entitled to individualized discovery in this FLSA collective action for the purpose of gathering evidence necessary both to challenge the conditional collective action certification and to refute Plaintiffs' substantive FLSA allegations and claims for back wages and liquidated damages?

**Statement of the Case**

**A.     THE PARTIES**

AT&T Operations, Inc. provides network, engineering, information technologies, shared services, customer care, and retail centers for the sale and merchandise of telecommunications products and services for AT&T Inc.'s subsidiaries.  To meet the sales and service needs of its varying customers, AT&T consists of several separate business units, including Consumer, Business, Network, Connectivity, and Wholesale Customer Care.

Two of its former employees—a Customer Sales and Service Specialist in the Consumer organization from Kansas City, and a Senior Consultant in the Business organization from Oklahoma City—together sued AT&T under the FLSA, claiming they were denied overtime compensation for hours worked.  The case was filed as a "collective action" under 29 U.S.C. § 216(b), which allows plaintiffs to sue on behalf of themselves and other "similarly situated" employees.

**B.     CASE BACKGROUND**

**1.     This FLSA Collective Action Has Been Only *Conditionally* Certified.**

In contrast to a class action under Federal Rule of Civil Procedure 23(b)(3), an FLSA collective action proceeds pursuant to an entirely different litigation model:  (1) the court initially grants or denies conditional collective action certification, based on a limited evidentiary record;

(2) upon conditional certification, individuals who want to become "a party plaintiff" must affirmatively opt into the case by giving "consent in writing"; (3) following discovery, and upon a motion for decertification, the Court must determine whether the conditional determination that the Plaintiffs and opt-in plaintiffs are "similarly situated" remains warranted in light of more fulsome discovery; and (4) absent a successful dispositive motion, the Court then determines the ultimate liability and damages issues regarding either the Plaintiffs alone, or the entire group of Plaintiffs plus opt-in plaintiffs. The Court's discovery order herein, however, effectively precludes Defendant from obtaining the evidence necessary to fully litigate stages 3 and 4 of this case.

During the first phase of this litigation, the Court conditionally certified the Plaintiffs' claims as a collective action, and authorized notice of this action to:

> [A]ll current and former employees who staff or staffed dedicated customer service telephone lines at Defendant's call centers in the United States within the last three years.

(Doc. 95). Armed with this broad definition, Plaintiffs' counsel sent notice to 5,589 current and former AT&T employees across the country, coming from over 70 locations and bearing over 40 different job titles. In response to this notice, 1,184 opt-in plaintiffs have joined this action. These opt-in plaintiffs may hale from any one of the following different locations:

| | | |
|---|---|---|
| 1505 WINDWARD CONCOURSE | ALPHARETTA | GA |
| 815 S TYLER ST | AMARILLO | TX |
| 2500 RIVA ROAD | ANNAPOLIS | MD |
| 95 W ALGONQUIN RD -- Z1 | ARLINGTON HEIGHTS | IL |
| 575 MOROSGO DR NE | ATLANTA | GA |
| 1025 LENOX PARK BLVD NE | ATLANTA | GA |
| 51 PEACHTREE CENTER AVE | ATLANTA | GA |
| 2800 CENTURY PKWY NE | ATLANTA | GA |
| 712 E HUNTLAND DR | AUSTIN | TX |
| 7884 OFFICE PARK BLVD | BATON ROUGE | LA |
| 600 19TH ST N | BIRMINGHAM | AL |
| 1715 6TH AVE N | BIRMINGHAM | AL |
| 613 DECEMBER DR | BIRMINGHAM | AL |

| | | |
|---|---|---|
| 3196 HIGHWAY 280 E | BIRMINGHAM | AL |
| 430 JOHN ST | BRIDGEPORT | CT |
| 25 1ST ST | CAMBRIDGE | MA |
| 351 S SILVER SPRINGS RD | CAPE GIRARDEAU | MO |
| 2359 PERIMETER POINTE PKWY | CHARLOTTE | NC |
| 1600 WILLIAMS ST | COLUMBIA | SC |
| 2535 E 40TH AVE | DENVER | CO |
| 4625 CREEKSTONE DR | DURHAM | NC |
| 1575 N RESLER DR | EL PASO | TX |
| 5 W SERVICE RD | HARTFORD | CT |
| 11820 LEESBURG PIKE | HERNDON | VA |
| 9051 PARK WEST DR | HOUSTON | TX |
| 175 E CAPITOL ST | JACKSON | MS |
| 301 W BAY ST | JACKSONVILLE | FL |
| 500 E 8TH ST | KANSAS CITY | MO |
| 2121 E 63RD ST | KANSAS CITY | MO |
| 1425 OAK ST | KANSAS CITY | MO |
| 1001 S KIRKWOOD RD | KIRKWOOD | MO |
| 410 N CEDAR BLUFF RD | KNOXVILLE | TN |
| 4513 WESTERN AVE | LISLE | IL |
| 601 W CHESTNUT ST | LOUISVILLE | KY |
| 9100 SHELBYVILLE RD | LOUISVILLE | KY |
| 4600 S 2ND ST | LOUISVILLE | KY |
| 84 DEERFIELD LN | MERIDEN | CT |
| 3300 W ESPLANADE AVE | METAIRIE | LA |
| 901 MARQUETTE AVE | MINNEAPOLIS | MN |
| 4001 CARMICHAEL RD | MONTGOMERY | AL |
| 333 COMMERCE ST | NASHVILLE | TN |
| 350 GEORGE STREET | NEW HAVEN | CT |
| 1 SCIENCE PARK | NEW HAVEN | CT |
| 200 CAPTAINS WALK | NEW LONDON | CT |
| 6 DEVINE ST | NORTH HAVEN | CT |
| 1 CHESTNUT ST | NORWICH | CT |
| 3033 CHAIN BRIDGE RD | OAKTON | VA |
| 3901 PENBROOK ST | ODESSA | TX |
| 221 N ROCKWELL AVE | OKLAHOMA CITY | OK |
| 9315 OLIVE BLVD | OLIVETTE | MO |
| 2000 TOWN CENTER BLVD | ORANGE PARK | FL |
| 500 N ORANGE AVE | ORLANDO | FL |
| 6633 W CAMELBACK RD | PHOENIX | AZ |
| 635 GRANT ST | PITTSBURGH | PA |
| 5715 GLENWOOD AVE | RALEIGH | NC |
| 400 WEST AVE | ROCHESTER | NY |
| 1630 LONG POND RD | ROCHESTER | NY |
| 500 ENTERPRISE DR | ROCKY HILL | CT |
| 4119 BROADWAY ST | SAN ANTONIO | TX |
| 4803 NW LOOP 410 STE 125 | SAN ANTONIO | TX |
| 1010 N SAINT MARYS ST | SAN ANTONIO | TX |
| 2600 CAMINO RAMON | SAN RAMON | CA |

| 600 E SAINT LOUIS ST | SPRINGFIELD | MO |
| 13450 W SUNRISE BLVD | SUNRISE | FL |
| 250 S CLINTON ST | SYRACUSE | NY |
| 1820 E PARK AVE | TALLAHASSEE | FL |
| 2300 NORTHLAKE CENTER DR | TUCKER | GA |
| 509 S DETROIT AVE | TULSA | OK |
| 348 GRAND ST | WATERBURY | CT |
| 154 N BROADWAY ST | WICHITA | KS |
| 2401 REACH RD | WILLIAMSPORT | PA |

These locations span multiple geographic regions and operational business segments, even though each of Defendant's business segments has varying reporting structures, business functions and operational methods.

Separately, these 1,184 opt-in plaintiffs hold—or have held—any one (or more) of the following different job titles at AT&T:

| |
| --- |
| SENIOR CONSULTANT [CWA06-SBC-OPS] |
| COMMUNICATIONS TECHNICIAN [CWA-T-CORE] |
| TELECONFERENCE SPECIALIST [CWA-T-CORE] |
| SERVICE REPRESENTATIVE [CWA03] |
| CUSTOMER SERVICE ASSOCIATE [CWA03] |
| SERVICE CONSULTANT [CWA03] |
| CSTR SLS & SVC SPCLT [CWA-T-CORE] |
| SERVICE REPRESENTATIVE [CWA1] |
| SR GENERAL CLERK-I [CWA06-SBC-OPS] |
| SLS AND SVC CONSULTANT [CWA06-SBC-OPS] |
| OPERATOR  [IBEW-T-CORE] |
| SR COMMUNICATIONS SPECIALIST |
| ALL DISTANCE SPECIALIST [CWA1] |
| SERVICE ASSISTANT  [IBEW-T-CORE] |
| SERVICE CONSULTANT [CWA1] |
| SERVICE REP-SPANISH CENTER [CWA1] |
| MULTI-MEDIA TECHNICIAN [CWA03] |
| CUSTOMER CARE SPECIALIST [NMNU-T] |
| TECHNICAL SUPPORT ENGINEER I |
| ADMINISTRATIVE ASSISTANT |
| COMMUNICATIONS SPECIALIST |
| ASSOCIATE ANALYST - DATA |
| MAINTENANCE ADMINISTRATOR [CWA03] |
| TECHNICAL CONSULTANT 1 NE |
| TELEMARKETING ASSOCIATE [CWA1] |
| SR RECORDS CLERK-I [CWA06-SBC-OPS] |
| SPECIAL REPORTS CLERK [CWA-T-CORE] |

5

| |
|---|
| TELEPHONE SALES SPECIALIST [CWA1] |
| ASSOC MGR QLTY/M&P/PROCESS SE |
| SVC ORDER WRITER-I [CWA06-SBC-OPS] |
| SERVICE CONSULTANT [NMNU-T] |
| SPECIALIST - CUSTOMER SERVICE |
| CSDG ASSEMBLER [CWA-T-CORE] |
| MANAGER-CHIEF OF STAFF |
| SERVICE CONSULTANT [CWA03-BASC] |
| SERVICE REPRESENTATIVE - PSP [CWA1] |
| SR REPORTS CLERK-I [CWA06-SBC-OPS] |
| SPECIAL ASSISTANT [CWA03] |
| CUSTOMER SERVICE ASSISTANT [CWA03] |
| OFFICE ASSISTANT [CWA03] |
| GENERAL OFFICE ASSOCIATE [CWA1] |
| REPORTS CLERK [CWA-T-CORE] |

It should also be noted that each of these job titles: (1) has a separate job description; (2) with a unique job function; and (3) is governed by varying labor contracts.[1]  AT&T is entitled to discovery to refute the factually unsupported allegation that all of these potential opt-in plaintiffs across the country and the AT&T organization are "similarly situated" and were uniformly denied wages.

## 2.  AT&T Requires Second-Phase Discovery Regarding Liability And Damages To Sustain Its Defenses And Refute Plaintiffs' Alleged "Similarly Situated" Status.

In defense of Plaintiffs' amorphous allegations, AT&T has asserted numerous individualized defenses relating not only to the question of liability, but also to the fundamental question of whether these Plaintiffs and the 1,184 opt-in plaintiffs are, in fact, "similarly situated" as required under § 216(b).  (Doc. 24, pp. 9-12).   For example, AT&T's defenses as

---

[1]  The following example illustrates the disparities between the opt-in plaintiffs.  Teleconference Specialists in Charlotte, NC process orders and schedule conference calls, taking on average only 2-3 customer calls per day. These putative opt-ins are not evaluated on their adherence to schedule or the length of time it takes them to process a call, nor do they have set sales quotas.  Conversely, Customer Sales and Service Specialists in Oklahoma City, OK, take in-bound customer calls stimulated by marketing campaigns.  These calls come in steadily from the beginning to end of their tours, and the employees receive dozens of calls each day.  They are evaluated on their adherence to schedule and time it takes them to process calls, as well as sales performance.  Conversely, again, at the Executive Teleconference Center in Minneapolis, MN, employees handle calls only on a rotating weekly basis, with most employees processing only on-line orders.

6

asserted in its Answer include, but are not limited to:

- Plaintiffs may not maintain this action as a collective action under 29 U.S.C. § 216 because they are not similarly situated to any other employee for purposes of the allegations and claims made in this lawsuit.

- The Complaint, and each purported cause of action set forth therein, is barred in whole, or in part, by the provisions of the Portal-to-Portal Act, 29 U.S.C. § 254, as to all hours during which Plaintiffs and others with whom they are allegedly "similarly situated" were engaged in activities that were not compensable work under the FLSA and were not an integral and indispensable part of their principal activities, including non-compensable activities that were preliminary to their principal activities, and walking to the actual place of performance of the principal activities.]

- Plaintiffs and others with whom they are allegedly "similarly situated" are precluded from recovering any amounts from Defendant where Defendant has paid them all sums legally due under the FLSA.

- Plaintiffs and others with whom they are allegedly "similarly situated" are estopped from pursuing the claims set forth in the Complaint by reason of their own acts, omissions, and course of conduct, including, but not limited to, their failure or refusal to record and report their time as required by Defendant.

(Doc. 24, pp. 9-12).

To prove these defenses, AT&T must conduct discovery, and gather evidence from, each of these opt-in plaintiffs regarding—among other things—the amount of time they allege to have worked off-the-clock, the "compensable work" they claim to have performed off-the-clock, the amount of damages each seeks. This more-detailed discovery is routinely permitted in the second-phase of such a conditionally certified collective action.

### 3. AT&T's Written Discovery Is Designed To Elicit Necessary, Specific Information From Each Opt-In Plaintiff Without Undue Burden.

Promptly upon receiving the notification of each opt-in plaintiff's decision to affirmatively join and participate in this suit as a party, AT&T served each plaintiff with written discovery designed to gather information necessary to its defenses. Each plaintiff was served

with only nine (9) interrogatories. Among these nine are questions regarding how much time each plaintiff claims to have worked off-the-clock and what damages each individual plaintiff seeks:

- Identify each calendar week you claim you worked overtime while employed by AT&T during the last five years, and for each calendar week you claim you worked overtime, state your job title, supervisor, and location where you worked overtime during the calendar week, and the number of overtime hours you worked.

- State the dollar amount of damages you claim, and provide a computation and explanation of the damages you seek in this Action.

Exhibit A, AT&T's Interrogatories to Plaintiff, nos. 3 and 5.

Also included in the nine questions are individualized requests for discoverable information which would, among other things, allow AT&T to identify which of these 1,184 opt-in plaintiffs it should depose:

- Identify all persons you believe have knowledge, information or documents regarding this Action and describe the knowledge, information or documents you believe such persons have.

- Identify your job titles, supervisors, and the locations where you provided services for AT&T during the last five years.

- Identify all persons whom you believe AT&T has failed or refused to properly pay overtime during the last five years, and for each person identify his or her job titles, supervisors, and locations where they provided services for AT&T, the job duties performed by such persons, and the number of overtime hours worked by such persons in each calendar week.

- While you were employed by AT&T during the last five years, did you have a personal computer, mobile phone, or other electronic device capable of sending or receiving e-mails, text messages, data, or documents? If so, identify the make and model of the devices, the operating systems, software and applications used by the devices, and the carriers or providers that facilitated data communication services for the devices.

Exhibit A, AT&T's Interrogatories to Plaintiffs, nos. 1-2, 4, 9.

Similarly, AT&T served each opt-in plaintiff with twenty-six (26) Requests for Production of easily identifiable documents, responses to which cannot even arguably pose an undue burden on any individual plaintiff. These Requests include, but are not limited to:

- All documents regarding your assertion that you and others "engage in preparatory activities and other related work activities that are integral and indispensable for [you] to perform [your] customer service duties."

- All documents regarding your assertion that AT&T "uniformly denied wages and overtime pay to its employees by requiring them to perform 'off the clock' work."

- All documents regarding your assertion that AT&T "required these call center employees to be 'ready to work' at the beginning of their scheduled shift."

- All documents regarding your assertion that "'[r]eady to work' meant the employee was ready to answer a phone call, including the following tasks: (1) booting up computers; (2) logging on to Defendant's network; (3) opening relevant computer programs; (4) reviewing any job-related memoranda and/or e-mail; and (5) completing other essential tasks."

- All documents regarding your assertion that AT&T "adhered to the same policies and practices with respect to its hourly employees who staffed telephone lines at all of its call centers."

- All documents indicating any time spent by you during your employment with AT&T "(1) booting up computers; (2) logging on to Defendant's network; (3) opening relevant computer programs; (4) reviewing any job-related memoranda and/or e-mail; and (5) completing other essential tasks."

Exhibit B, AT&T's Requests for Production to Plaintiffs, nos. 7-8, 10-11, 13, 19. Each of these Requests very precisely seeks documents regarding allegations in the Complaint, which AT&T will refute at trial.[2]

---

[2] Although the Court's Order labeled several of these document requests as being of the "contention" variety, AT&T submits that it is fully appropriate to ask the opposition to produce all documents each opt-in plaintiff possesses that even arguably support these fundamental allegations. Moreover, contrary to the Court's observation that such documents should have been produced already, that would only have been the case if they had been in the possession of one of the two named plaintiffs. Short of the Court compelling this production, there arguably is no

By barring AT&T from obtaining responses to these requests from anyone other than people working at two of the seventy locations that could be at issue, this Court's June 8, 2010 Order unjustly precludes AT&T from discovery necessary to (i) show the Plaintiffs and opt-in plaintiffs are not in fact "similarly situated," (ii) disprove the allegation of systemic FLSA violations resulting in unpaid overtime, and (iii) refute the individual FLSA claims of each Plaintiff and opt-in plaintiff. This denial of AT&T's ability to develop its defenses flies in the face of the Federal Rules of Civil Procedure and fundamental notions of due process.

## Argument and Authorities

### A. FLSA PROCEDURAL CONSIDERATIONS REQUIRE DISCOVERY REGARDING THE INDIVIDUAL EXPERIENCES OF OPT-IN PLAINTIFFS.

The FLSA requires employers to compensate non-exempt employees at overtime rates for time worked over the statutorily-defined threshold of 40 hours per week. 29 U.S.C. § 207(a). If an employer does not make overtime payments for hours worked in excess of 40 during a work week, the statute authorizes an employee to bring suit against his or her employer; employees may pursue their own claims and other "similarly situated" employees may be permitted to join the action. 29 U.S.C. § 216(b). Admittedly, one purpose of a collective action is "to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights." *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, at *3 (E.D. La.) (citing *Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 943 (W.D. Ark. 2003) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482 (1989))). However, nothing in the FLSA excuses employees who affirmatively join the action as "a party plaintiff" from participating in the prosecution of the case. Moreover, in order for a conditionally certified collective action to

requirement that Plaintiffs' counsel even ask for such documents from any of the 1,184 opt-in plaintiffs at this time. Down the road, if this matter proceeds to trial on a collective action basis, there will be nothing to prevent Plaintiffs' counsel from potentially introducing in rebuttal documents they obtain only once such witnesses are prepared for trial testimony.

continue to judgment in that collective status, the evidence adduced through discovery must substantiate that the Plaintiffs and opt-in plaintiffs are indeed "similarly situated" to one another. *Id.*

### 1. This Court Has Adopted A Two-Step Process For Assessing "Similarly Situated."

Although the Eighth Circuit has not expressly adopted a single approach to analyzing FLSA collective actions, courts within this District—including this Court—follow the bifurcated, *ad hoc* approach adopted by the Fifth and Tenth Circuits when determining whether the Plaintiffs and the opt-in plaintiffs are "similarly situated." (Doc. 95); *see Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007); *see also Mooney v. Aramco Services Co.*, 54 F. 3d 1207, 1213 (5th Cir. 1995); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001). Under this two-step approach, plaintiffs typically move for conditional certification, and for distribution of notice, early in the case. If the court grants conditional certification, the defendant may move to decertify *following discovery*. *See Davis v. Novastar Mortgage, Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005).

#### a. Differing standards apply at each stage for assessing whether the Plaintiffs and opt-in plaintiffs are "similarly situated."

As required under § 216(b), during each of the two stages of the litigation the Court considers whether potential opt-in plaintiffs are "similarly situated." *See Mooney*, 54 F. 3d at 1213. At the first stage—i.e., *conditional certification*—the Court usually has minimal evidence before it and uses a "fairly lenient" standard. *Id.* at 1214. In the present case, the Court has already conducted this initial analysis and authorized the sending of notice to nearly 6,000 potential plaintiffs. (Doc. 95).

*Following discovery*, the Court reconsiders certification. *See id.* During the second stage, with the aid of information gained during discovery, the Court considers whether the opt-

in plaintiffs are "similarly situated" to the named plaintiffs. *See id.* If they are, the collective action may proceed. *See id.* If they are not, the collective action is decertified, the opt-in plaintiffs are dismissed, and the original named plaintiffs may proceed only with their own individual claims.

At this second stage, the burden is on the Plaintiffs to prove that they and the opt-in plaintiffs are similarly situated. *See Bayles v. Am. Med. Response of Col., Inc*., 950 F. Supp. 1053, 1062-63 (D. Colo. 1996); *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003); *Basco*, 2004 WL 1497709 at *4-5. Because it is expected that the parties will have been allowed to conduct discovery, the "similarly situated" inquiry at the second stage is much more stringent. *Harris v. Fee Transp. Servs., Inc*., 2006 WL 1994586, at *2-3 (N.D. Tex.). Importantly, the Court considers several factors at this stage in the analysis, including:

> (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the defendant] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations ...

*Thiessen*, 267 F.3d at 1103; *see also Lusardi*, 118 F.R.D. at 359 (describing the "similarly situated" standard at the second stage as "stricter" than that applied at the first stage). In the absence of specific discovery that probes each putative plaintiff's personal employment experience and claims, neither of the first two factors that must be considered can be considered, thereby defeating the very purpose of the two-step certification process.

           b.    <u>Having the benefit of *full* discovery, in the second stage, the Court is better able to identify material factual distinctions that warrant decertification.</u>

To avoid decertification, Plaintiffs must show there is "a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice.]" *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988), *Crain v. Helmerich & Payne Intern'l*

*Drilling Co.*, 1992 WL 91946, *1 (E.D. La. 1992). Decertification is proper if "the action relates to specific circumstances *personal to the plaintiff* rather than any generally applicable policy or practice." *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D.Colo. 1987); *see also Helmerich*, 1992 WL 91946 at *1. In fact, "the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). If the Court's Order stands, the only evidence that will be available to Defendant will be that reflective of the named Plaintiffs' experiences— but the named Plaintiffs came from only 2 of 70 locations. Thus, the Court's Order prevents any real possibility of "revealing" "material distinctions."

**2.  Differing Experiences Of Individual Opt-In Plaintiffs, and Differing Practices in Various Locations May Necessitate Decertification of 216(b) Collective Actions.**

District Courts have granted motions to decertify where there was great variety in the factual allegations among the individual opt-in plaintiffs. For example, in *Johnson v. TGF Precision Haircutters, Inc.*, the court granted a motion for decertification at the second stage of the "similarly situated" analysis. 2005 WL 1994286 (S.D. Tex.). The plaintiffs alleged that hourly employees were not being paid overtime and were working off the clock. *See id.* at *1. At the first stage, the Court authorized sending notice to nearly 4,000 potential plaintiffs, and 264 employees from over 90 locations filed opt-in consents. *See id.* at *1. The defendant then moved to decertify the conditionally certified collective action. *See id.* The court found that the evidence showed "a substantial variance of experiences by different Plaintiffs under different managers and at different shops around Texas." *Id.* at *3. For example, plaintiffs from some stores stated they were not allowed to clock in when they worked for 15 minutes before the store opened. *See id.* At other stores, employees clocked in for preliminary time. *See id.* Additionally, the Plaintiffs' experiences varied regarding (i) whether they were required to

clock-out when waiting for customers, and (ii) if they were allowed to leave the store when clocked-out and waiting. *See id.*

The *Johnson* court noted that, much as in this case, the "large number of widespread shops, each with its own manager, understandably appears to have contributed materially to the dissimilarities in the Plaintiffs' experiences." *Id.* at *2. Although the plaintiffs alleged an overarching policy to deny them overtime, the company's actual policy in the manual—again, as in this case—instructed employees to make sure their timesheets accurately reflected the hours worked. *See id.* at *3. The court concluded that although the evidence established that "some Plaintiffs may have *prima facie* claims for FLSA violations at different times, in different places, in different ways, and to differing degrees," the overall "evidence of varied particular violations" was not enough to prove a "uniform, systematically applied policy of wrongfully denying overtime pay to Plaintiffs." *Id.* at *4. The "highly variable" nature of the alleged violations that differed by manager meant that the collective action should be decertified. *See id.* Given the Court's discovery Order, here, AT&T is denied the opportunity to show, through the opt-in plaintiffs' experiences, the "highly variable" nature of the claims.

### 3. Individualized Defenses May Necessitate Decertification of 216(b) Collective Actions.

In deciding whether to decertify the collective action at the close of discovery, this Court will evaluate the individualized nature of AT&T's defenses as they relate to each opt-in Plaintiff. *See Theissen*, 267 F.3d at 1103. Highly individualized defenses often will make the collective action mechanism impracticable and warrant decertification.

For example, in *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278 (N.D. Tex. 2008), the evidence gathered in the second phase specific to each opt-in plaintiff, revealed significant factual variation in the individual plaintiffs' claims and the times they alleged they

worked off the clock. The court recognized that differences in the plaintiffs' claims meant the defendant's defenses would also vary. *See id.* Defenses to claims that individuals who did not work off the clock, but were still paid incorrectly, were found to be distinct from the plaintiffs alleging they were asked to work off the clock by management. *See id.*

Similarly, regarding off-the-clock claims, the court in *Basco* noted that the variety of defenses could include

> (1) that the particular class member did not in fact work off-the-clock, (2) any instructions received to work off-the-clock without compensation were outside the scope of authority and directly contrary to the well established policy and practice, (3) even if a particular class member did work off-the-clock, that employee unreasonably failed to avail themselves of curative steps provided by defendant to be compensated for that work ... (5) a class member had an actual and/or constructive knowledge of [Defendant's] policies banning off the clock work and voluntarily chose to engage in such work in deviance of that policy ...

2004 WL 1497709 at *8. These, of course, are the exact defenses at issue in this case. But in the absence of discovery from individual opt-in plaintiffs as to what their claims are, whether they were told to work off the clock, who gave them instructions on beginning their work days, taking breaks, or staying after the end of a shift—if indeed they ever received any such instructions—AT&T has little or no ability to demonstrate the existence of individualized defenses.

Ultimately, both the *Proctor* and *Basco* courts decertified the collective actions because the variety of individualized defenses made a collective action an impracticable approach. *See id.* This Court's Order essentially precludes such a ruling here, regardless of the actual facts.

**B.   THIS COURT'S ORDER FAILS TO ACCOUNT FOR FLSA PROCEDURAL CONSIDERATIONS AND TO ACCOMMODATE AT&T'S FUNDAMENTAL RIGHT TO DEFEND ITS CASE.**

This Court's Order wholly discounts AT&T's need for discovery in this second phase of the litigation. Indeed, the Order places AT&T on the sidelines while imposing no limits on

15

Plaintiffs' unfettered ability to conduct discovery relating to all potential locations and job titles. The inequity of this discovery order is—and will continue to be, absent judicial remedy—reflected in the disparate discovery exchanged between the parties to date. Specifically, AT&T has currently produced <u>86,560 separate data files and pages</u> of documents in response to Plaintiffs' discovery requests. Plaintiffs, bestowed with the unjust benefit of this Court's Order, have produced only <u>981 pages</u> of documents. Even more notable than the meager number of documents produced by Plaintiffs is the fact that only 333 of the 1,184 opt-in plaintiffs have even responded to the written discovery at issue in this motion, and those "responses" included <u>0 pages</u> of documents. Instead, each opt-in plaintiff generically responded, "Responsive documents will be produced, if any Respondent has and can locate any such documents." *E.g.,* Exhibit C, Plaintiffs' Response to Defendant's Requests for Production, nos. 2 and 3.[3]

AT&T is left to rely on Plaintiffs' untenable disclosures and generalizations regarding damages sought by the opt-in plaintiffs, and no written discovery is allowed specific to AT&T's individualized defenses. Remarkably, AT&T is not even allowed to conduct discovery necessary to determine if FLSA violations *actually* occurred. One fundamental example drives home the critical necessity of such discovery. Even if the opt-in plaintiffs generally alleged *en masse* that they worked 3 hours each week "off-the-clock" for which they were not compensated, an FLSA overtime violation still could not be presumed because the record evidence does not establish that each putative Plaintiff actually worked more than 37 hours of paid time each week, such that the alleged unpaid hours cause them to meet the threshold requirement of working in excess of 40 hours per week.[4] Moreover, there is no company document—based upon Plaintiffs' own

---

[3] The opt-in plaintiffs also asserted a ubiquitous objection to attorney-client privilege and work product but did not indicate whether any documents have been withheld based upon that overarching objection, nor did they provide a privilege log.
[4] Notably, while the 1,184 opt-in plaintiffs from the various locations across the country are subject to differing

dispute over the accuracy of AT&T's time records—to support or refute the *en masse* allegation that each worked 3 hours of unpaid time. This information, rather, is solely within the possession of each opt-in plaintiff. This key issue alone cries out for individualized discovery.

This Court's Order denies AT&T discovery of fundamental, outcome-determinative information. This result is manifestly unjust and compels this Court's reconsideration.

### 1. AT&T's Defenses Are Highly Individualized, Yet This Court Disallowed Discovery Regarding Such Evidence.

AT&T cannot effectively mount a defense without discovery regarding the individual opt-in Plaintiffs. Plaintiffs must prove—leaving AT&T to refute—they are "similarly situated" and that material factual disparities do not warrant decertification. AT&T must be allowed to refute this allegation with evidence that the experiences of each opt-in Plaintiff varied. *See Theissen*, 267 F.3d at 1103. Specifically, AT&T believes the opt-in Plaintiffs' experiences differed:

    (1)  among different call centers or locations;

    (2)  across different business units with varying reporting structures;

    (3)  between the vast number of job titles with different job responsibilities (including time spent taking in-bound customer calls);

    (4)  under different managers with unique practices and local expectations; and

    (5)  based upon each individual Plaintiff's daily routines and work habits.

AT&T has reason to believe that these significant differences amount to material factual disparities, warranting decertification. *See Johnson*, 2005 WL 1994286; *Proctor*, 250 F.R.D. 278; *Basco*, 2004 WL 1497709. Accordingly, AT&T served discovery specifically designed to

---

Collective Bargaining Agreements, each agreement provides only for a 37.5-hour work week. Consequently, even if each opt-in plaintiff alleged to have worked as much as 2.5 hours of "off-the-clock," compensable work time each week, there would still not be evidence sufficient to impose liability for unpaid overtime under the FLSA. Again, individualized discovery is necessary to determine exactly how much time each opt-in plaintiff alleges (s)he worked each week and whether the "work" each alleges to have performed is even compensable.

elicit this relevant information from each individual opt-in plaintiff. *See, e.g.,* Exh. A, nos. 2-5; Exh. B, nos. 7-8, 10-11, 13, 19. It is unclear how AT&T is expected to derive information regarding each individual plaintiff's varying routines and work habits—much less information regarding each individual's conformance with local expectations and time-reporting requirements—from its own documents, when Plaintiffs themselves claim AT&T's documents do not reflect all time actually worked.

In fact, despite this Court's conclusions regarding damages in its June 8, 2010 Order, it is not clear that each of these opt-in Plaintiffs actually engaged in work—off-the-clock or otherwise—in excess of 40 hours in any given week, which is necessary even to trigger liability under the FLSA. (Doc. 203, at 2) (This Court concluded, without explanation, that "If it is determined that employees were required to login before the start of their shift, damages will be calculated by multiplying the applicable wage by the amount of time necessary to login, multiplied again by the number of days the employee worked.").[5] The uncertainty regarding Plaintiffs' alleged damages is even further amplified when considering the additional claims for damages related to alleged work during paid breaks and post-shift. Again, the rudimentary damages calculation proposed by the Court does not account for these additional allegations, and it certainly does not obviate AT&T's rights to defend against them.

Without the ability to gather discovery from the individual opt-in Plaintiffs, AT&T cannot adequately evaluate and argue its individual defenses to Plaintiffs' self-proclaimed prophecy that they and the 1,184 opt-in plaintiffs are all "similarly situated" for purposes of § 216(b). *See Renfro v. Spartan Computer Services, Inc.*, 2008 WL 821950, at *2 (D. Kan. March

---

[5] This Court then goes on to conclude that "[t]here is no great need to rely on the employees' memory to ascertain damages – the superior, more reliable evidence resides in Defendant's records." (Doc. 203, at 2). However, Plaintiffs themselves argue that AT&T's own records are inaccurate and fail to reflect actual time worked, making it unreasonable to then force AT&T to rely solely on that information to disprove Plaintiffs' allegations regarding liability and damages.

26, 2008) (allowing individualized written discovery to each opt-in plaintiff because "the purpose of the second step of the *ad hoc* analysis is to consider the unique circumstances of each plaintiff -- an undertaking which would be nearly impossible without some amount of individualized discovery.").

Most notably, AT&T's defenses to the "similarly situated" requirement nearly mirror those in *Basco*, wherein the Court concluded that decertification was the only just result due to the highly individualized nature of the defenses. 2004 WL 1497709. It follows, therefore, that AT&T is entitled to participate in the written discovery process in this second phase of the litigation to ascertain the varying experiences of the individual opt-in Plaintiffs.

### 2.     It Is An Error Of Law To Supplant § 216(b) Procedural Considerations With Rule 23.

In its June 8, 2010 Order, this Court addressed the differences between a Rule 23 class action and a § 216(b) collective action—thus recognizing that they are procedurally distinct. Nonetheless, the Order ultimately applied "Rule 23-esque" limitations to discovery, and mistakenly characterized this § 216(b) collective action as "representative". It is not, Rule 23 has no bearing on § 216(b), and it is manifest error to impose Rule 23 limitations on AT&T— particularly when none of the benefits or protections of Rule 23 have been made available to AT&T.

#### a.     Rule 23 procedures do not apply to this FLSA collective action.

Rule 23 principles are not controlling in FLSA collective actions. *See Renfro*, 2008 WL 821950, at *2, *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 n. 18 (D.N.J. 1987); *see also Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1067 (D.Colo. 1996) ("Despite the unpredictability of an *ad hoc* approach, I see no basis to conclude that the paradigm of Rule 23

can be engrafted upon § 216(b)").

In *Renfro*, the court distinguished between collective actions under the FLSA and class actions under Rule 23, noting that, unlike a certified class action, where plaintiffs are automatically class members until they opt out of the lawsuit, FLSA plaintiffs *choose* to participate in the lawsuit as "party plaintiffs" by filing their consents to join. *See id.* The court went on to affirm the magistrate's ruling to allow defendants' individualized discovery because the opt-in plaintiffs are present in the litigation and, in part, because plaintiffs' consent forms acknowledged that they "may be required to respond to written questions, produce documents, give deposition testimony, and/or testify in court." *Id.* at *2. Notably, a similar directive was included in the notice sent to potential opt-in plaintiffs in this case. (Doc. 76-26).

      b.    <u>This Court's Order is inequitable because it imposes Rule 23 procedural limitations on AT&T without subjecting Plaintiffs to the rigors of Rule 23 certification requirements.</u>

If Rule 23 were to be applied to this § 216(b) collective action—though it should not—it defies all fairness considerations to hold only one party to the confines of the rule. Specifically, Plaintiffs in this case were not required to meet the Rule 23(a) prerequisites for sustaining a class action because this is not, in fact, a Rule 23 class action with absent class members. Nonetheless, this Court effectively has imposed Rule 23 discovery limitations on AT&T. Conversely and inequitably, Plaintiffs are allowed to conduct discovery regarding all locations and all job titles, without limitation by this Court. In addition to being fundamentally unfair, this one-sided limitation on discovery is ill-fitting in this § 216(b) case because, unlike in a Rule 23 class action, the opt-in plaintiffs have not been vetted for typicality or commonality.

Fairness considerations preclude this inequity. A second look by this Court is the only just response.

### 3. AT&T Is Entitled To Conduct Discovery Regarding Damages Sought, Which Cannot Be Ascertained On A Representative Basis.

Even if this Court otherwise were inclined to limit discovery of liability issues to a representative basis, there is nothing in § 216(b), or related case law, allowing Plaintiffs to prove damages on behalf of the 1184 opt-in plaintiffs on a *representative* basis. In fact, it has long been held that

> [A]n employee who brings suit under [29 U.S.C. § 216(b)] of the [FLSA] for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)).

AT&T, with its written discovery, attempts to collect information regarding each opt-in plaintiff's alleged damages. Without this discovery, the parties cannot even begin to accurately valuate the claims in this case for purposes of litigation or even settlement negotiations.

Moreover, Plaintiffs have no legal right to speculate about or extrapolate damages for the entire opt-in group based upon the testimony or experiences of a limited few. Plaintiffs' argument that they will simply rely on payroll records from AT&T is duplicitous. To be clear, these are the same records Plaintiffs claim are inaccurate and fall short of reflecting actual time worked. This is the precise reason AT&T must be allowed to discover exactly what each individual Plaintiff claims (s)he is owed.

### 4. The Discovery Sought By AT&T Is Not Unduly Burdensome On Any Plaintiff And Is, Rather, Designed To Promote Efficient Information Gathering.

As explained by the Court in *Renfro*, the relevant inquiry is whether the discovery served poses an undue burden on each individual opt-in plaintiff. 2008 WL 821950, at *1, *3 (upholding Judge Waxse's consideration of "the burden imposed on each individual plaintiff" and finding "because each plaintiff has been given notice of potential discovery obligations, their

conclusory statements of burden did not justify a protective order."). In this case, Plaintiffs cannot articulate an undue burden to each individual opt-in plaintiff responding to AT&T's written discovery, and conclusory statements about the number of opt-in plaintiffs are unavailing. *See id.*

Notably, the other discovery mechanism available to AT&T for gathering this information is depositions. Written discovery, however, has long been recognized as a more-efficient, less-costly means of discovery than depositions. *See id.*, at *3 ("In complex litigation, depositions 'tend to be the most costly and time-consuming activity.'") (quoting MANUAL FOR COMPLEX LITIGATION (Fourth) § 11.45 (2004)) Certainly, Plaintiffs do not favor AT&T deposing all 1,184 opt-in plaintiffs in order to ascertain the information it must have in order to defend this case. AT&T should at least be permitted to gather written discovery responses in order to identify the fractional subset of opt-in plaintiffs to depose. This approach is not burdensome, but rather, the most efficient means for AT&T to gather information needed to sustain its defenses.

## Conclusion

For all these reasons, AT&T moves this Court to reconsider its June 8, 2010 Order and allow AT&T the individualized discovery it requires to adequately defend its case.

Respectfully submitted,

s/Patrick F. Hulla
Patrick F. Hulla, #41745
Stacy M. Bunck, #53229
Tracey F. George, #52361
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4717 Grand Avenue, Suite 300
Kansas City, Missouri 64112
816-471-1301

816-471-1303 (*Facsimile*)
patrick.hulla@ogletreedeakins.com
stacy.bunck@ogletreedeakins.com
tracey.george@ogletreedeakins.com

Danuta Bembenista Panich, #3121980 (Illinois)
Christopher C. Murray, #26221-49 (Indiana)
Robert F. Seidler, #74178 (Ohio)
All *admitted pro hac vice*
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
111 Monument Circle, Suite 4600
Indianapolis, Indiana 46204
317-916-1300
317-916-9076 (*Facsimile*)
danuta.panich@ogletreedeakins.com
christopher.murray@ogletreedeakins.com
robert.seidler@ogletreedeakins.com

Paula Finlay Luepke, #41152
Mimi B. MacDonald, #37606
AT&T Services, Inc.
One AT&T Center
Room 3566
St. Louis, MO 63101
314-235-2322
314-247-0881 (*Facsimile*)
paula.luepke@att.com
mimi.macdonald@att.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 15th day of July, 2010, I electronically submitted the foregoing to the Clerk of the Court with notification of such filing by electronic mail to the following:

George A. Hanson
Richard M. Paul III
Lee R. Anderson
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
816-714-7100
816-714-7101 *(Facsimile)*
hanson@stuevesiegel.com
paul@stuevesiegel.com
lehr@stuevesiegel.com

s/ Patrick F. Hulla
ATTORNEY FOR DEFENDANT

8852063.1 (OGLETREE)